CURATORS OF CENTRAL COLLEGE v. B. L. SHIELDS, Appellant.—No. 39325.—188 S. W. (2d) 835.

Division One, July 2, 1945.

130

*Roy D. Williams* for appellant.

*Luman Spry* and *Frederic A. Culmer* for respondent.

132

DALTON, C.—Action to quiet the title to 86/100 of an acre of described real estate in Howard county. The petition is in two counts. The first count states a cause of action at law to quiet and determine title under Sec. 1684, R. S. 1939 and alleges that plaintiff's claim to ownership is based upon adverse possession for the period provided by Sec. 1002, R. S. 1939. The second count states a cause of action in equity under Sec. 1684, R. S. 1939 to quiet title and remove cloud on title. Plaintiff, in this count, claims title by a direct conveyance to it and seeks to have a certain right of way deed of plaintiff, and a plat filed by another, declared void and the cloud thereof removed and title quieted in plaintiff. Both counts were tried to the court in one hearing. The court found the issues for plaintiff and entered judgment, but the only relief granted was the quieting of the title in plaintiff, to wit, that defendants "have no interest in and to the land in question, and that title thereto is vested in the plaintiff." Defendant Shields has appealed. A detailed statement of the pleadings, issues and findings of the court appears in an opinion of Kansas City Court of Appeals transferring the cause to this court. Curators of Central College v. Shields (Mo. App.), 182 S. W. (2d) 792.

.. Plaintiff and one Robert N. Chancellor were the owners of adjoining lands in the City of Fayette and both properties abutted on Mulberry street. Plaintiff had acquired its property by deed in 1911. In 1915 Mr. Chancellor desired to plat and open up his lands as a subdivision of the city. He wanted an additional entrance from Mulberry street, so that Chancellor street, as proposed, would extend from Mulberry street across his and plaintiff's properties and re-enter Mulberry street. The minutes of the Board of Curators of Central College, for June 7, 1915, show a report of a committee to the effect that Mr. Chancellor wanted this strip of land; and that the committee recommended a sale of the land for street purposes. It is the title to this tract or right of way that is now in dispute.

On November 1, 1915, and, prior to the execution of any right of way deed by plaintiff or any arrangement for the payment of the agreed consideration, Chancellor and wife executed a deed of trust on the real estate proposed to be subdivided to secure the payment of $4000 to defendant's father. Although now disputed, the parties stipulated at the opening of the trial that the property described in this deed of trust included the 86/100 acres of land in controversy.

On May 8, 1916, Mr. Chancellor procured from plaintiff a deed to the right of way in dispute, but the deed was made to the City of Fayette. The deed recited a consideration of one dollar and quit claimed the described land, as a right of way "for the purpose of establishing and maintaining a public highway or street." The deed was signed and acknowledged by John A. Rich, Chairman of the Board of Curators of Central College, but it did not show the seal of the corporation and it was not attested by the secretary of the plaintiff corporation. There was evidence that a note was to be given for the purchase price of the right of way and there was evidence that the note, if given, was never paid. There was also evidence that the deed was not authorized at the time it was executed. There was no evidence that this deed was ever accepted by the city and it was not recorded until June 3, 1919.

On June 5, 1916, Mr. Chancellor filed, in the office of the recorder of deeds of Howard county, a plat of what is known as Chancellor's first addition to the City of Fayette. The land in dispute is shown on the plat and is that part of Chancellor street which extends across plaintiff's lands. It is admitted that Mr. Chancellor did not own this particular land at the time the plat was filed. The plat was accepted and approved by the City of Fayette on June 5, 1916.

On June 1, 1929, a deed of trust was executed by Mr. Chancellor to defendant Shields. This deed covers the same property as described in the deed of trust of June 5, 1916. Although it is not entirely clear from the record, the parties apparently agree that this second deed of trust was a renewal of the former deed of trust, which secured a note payable to defendant's father, and the trial court so found.

On September 2, 1941, the City of Fayette, by an ordinance of that date, undertook to vacate that part of Chancellor street extending across plaintiff's property, "from Mulberry street to the property line of the Chancellor farm." The ordinance recites the conveyance of the described property by plaintiff to the city for street purposes, "as a friendly assistance to the 'Chancellor Addition' to the said city," and then states: "Whereas, the said proposed addition has always been, and is now, naught; and . . . there never has been, nor is now, any public object served by said street that was not in existence and served by other streets and roadways prior to May 8, 1916, or that cannot be served by other streets and roadways, and Whereas, it is the judgment of the Board of Aldermen of the City of Fayette, Missouri, that a necessity exists to close and vacate said street, towit: that by reason of its recently acquired new lands, donated by its athletic club, the said corporation now finds its athletic field divided by said street, to the threatened injury of the corporation, implicit in the dissatisfaction of its students at Central College." The ordinance then provides that that part of Chancellor street across plaintiff's property be vacated; and that the city relinquish "all of its right, title, and interest, in and to the said described parcel or tract of land, to the original voluntary donor, The Curators of the Central College, of Fayette, Missouri."

Thereafter on November 26, 1941, defendant Shields acquired by trustee's deed under foreclosure of the deed of trust of June 1, 1929, all of the real estate described therein, including the 86/100 acres of land in controversy. Defendant Shields testified in the hearing of the cause that he owned "the land described in the petition known as being a road"; that he owned the right of way; and that he had another way to get out from his residence to Mulberry street. There was also evidence that he tore down the barricades erected by plaintiff and precipitated the present suit.

There is much conflict in the evidence concerning the condition and use of the described property between June 7, 1915 and April 27, 1942, when the present suit was instituted. According to plaintiff's witnesses Chancellor's addition was never opened up, no houses were ever built and only one or two lots were sold. Chancellor street was never graded for its full length, but only up to the Chancellor house. Plaintiff remained in the exclusive possession and control of described right of way over its lands. There was a private road on the land in dispute prior to May 8, 1916, and, when the street commissioner of the City of Fayette and other city employees "attempted to level over" the right of way, the plaintiff put up a barricade, and the City of Fayette did not resist plaintiff's claim. The plaintiff "shut the public out and they stayed out." The only public use of the property was "by sufferance of the college." At one ▉▉▉ time Mr. Chancellor requested and was granted permission "to bring some rock from the

stone quarry to put on that road" and he was permitted to use the road, when it was too wet to go the other way. Prior to June 10, 1915, a bridge had been built across a small stream on the private roadway. For years, this road had been the only entrance (for buggies and wagons) to that part of plaintiff's property. A paving construction company had rocked this road when they had a rock quarry on the place, apparently, prior to the filing of the plat. The college hauled dirt from about its heating plant and put it on the road. No fence was ever built on either side of the right of way in question. The whole property was used by plaintiff, and when the city attempted to repair the bridge, a representative of the college protested to the mayor.

According to defendant's evidence the road in controversy was opened and maintained by the City of Fayette, immediately after the plat was filed. The street was known as Chancellor street. It was marked by a street sign on Mulberry street and it was used by the public. Mr. Chancellor traveled the street from the time it was opened in 1916 until he left the place. After plaintiff acquired the Chancellor property, he used the road. The city built the bridge across the little creek in 1915 and kept the bridge in repair. The bridge was subsequently rebuilt by the city after the old one washed out. City employees hauled rock and placed it in the ditches along the sides of the road and worked on the road and maintained it every year. The street was graded, when it needed it and the street was dragged and cindered by order of the mayor.

Except as evidenced by the finding for plaintiff and the finding that, since the foreclosure of the deed of trust, "there is no longer any public street over the strip of land in question and no longer any occasion for such," the trial court did not determine the issues of fact presented by the above evidence.

Appellant Shields assigns error on the finding for plaintiff and contends that "the land in controversy was dedicated by the plaintiff to public use"; that the right of way deed was valid between the parties; that "public money was spent upon the land . . . over a long term of years, which amounts to a common law dedication"; that "the statute of limitations, since 1857, does not run against a city"; and that "the court erred in holding that the city could, by ordinance, abandon a city street."

From the pleadings, evidence and brief, it appears that appellant's claim to some right, title or interest in and to the described property is based solely upon the theory that the property is a part of a public street in the City of Fayette. Appellant alleged that if "the said Chancellor avenue should be vacated this defendant would sustain an injury special and peculiar to him, by reason of the fact that he owns the lots abutting said street." Appellant now urges that he "has a right to have the street remain open, though he may have other ways of reaching" his property. It is clear that appellant claims no private

easement or right of way across the described lands, either by grant, prescription or otherwise. While there was testimony tending to show a claim of personal ownership, apparently based on the alleged purchase and payment by Mr. Chancellor and the acquisition of Mr. Chancellor's interest by appellant upon the foreclosure of the deed of trust, no such theory is presented by the pleadings or in the brief.

The evidence satisfactorily established that, at and prior to the institution of this suit, the plaintiff (respondent here) was in the open, exclusive and adverse possession of the described real estate claiming to own the same. Plaintiff has a deed to the property and its prior ownership is conceded. Its only deed was made to the city. The City of Fayette was made a party defendant, but it had previously evidenced its intention to abandon all claim to the property. It did not appear or contest the plaintiff's action. The City of Fayette, therefore, claims no interest in the described property, either by grant, dedication, estoppel or otherwise. The evidence is sufficient to authorize a judgment and finding for plaintiff on the issue of ownership, unless the appellant has a superior right. Lossing v. Shull, 351 Mo. 342, 173 S. W. (2d) 1, 6. Appellant's claim, as stated, is not based on any theory of private ownership, but on the theory that the described property constitutes a public street of the City of Fayette, which appellant has the right to have kept open and to use.

Does appellant have any right, title or interest which he may assert in the present suit? Appellant owns certain lots abutting on both sides of Chancellor street, but none of appellant's property actually abuts upon that part of Chancellor street claimed to be owned by the plaintiff. That part of Chancellor ▮▮▮ street which actually abuts appellant's land, and provides ingress and egress thereto, is not involved in the present action and there is no evidence of special and peculiar damage to appellant by reason of the closing of that portion of Chancellor street across respondent's land.

We will assume, without deciding, that the real estate possessed, claimed and obstructed by plaintiff-respondent is in fact a public street and thoroughfare of the City of Fayette, as fully as contended by appellant, and that it has not been vacated. Does appellant have any private property right whatsoever in and to the disputed portion of the right of way of such public street? While the disputed tract would provide an additional right of way by which appellant could reach Mulberry street and, without it, the remainder of Chancellor street will constitute a mere cul de sac from appellant's property to Mulberry street, nevertheless, we believe that appellant has no private right, title or interest in the described property which may be adjudged to him in this proceeding.

Appellant could not maintain an action to abate a nuisance by reason of an obstruction of such public street, because the obstruction would be a public nuisance and not a private wrong. Gorman v. C., B.

& Q. R. Co., 255 Mo. 483, 164 S. W. 509. Nor could appellant collect damages on account of such obstruction, because his damages, while greater in degree, would be the same kind as suffered by the general public. Siemers v. St. Louis Elec. Term. R. Co., 348 Mo. 682, 155 S. W. (2d) 130, 136; Rude v. St. Louis, 93 Mo. 408, 415, 6 S. W. 257.

Section 7197, R. S. 1939 provides that, "cities of the fourth class shall have and exercise control over all streets, alleys, avenues and public highways within the limits of such city." Section 7172, R. S. 1939 provides that, "the board of aldermen (of such cities) may prohibit and prevent all encroachments into and upon sidewalks, streets, avenues, alleys and other public places of the city . . ." Section 7212, R. S. 1939 provides that, "the board of aldermen (of such cities) shall have power to create, open and improve any . . . street, avenue, alley or other highway, old or new, and also to vacate or discontinue the same whenever deemed necessary or expedient . . ." It, therefore, appears that all public rights with reference to such streets and avenues in cities of the fourth class have been by statute vested in such cities and their proper officers.

Appellant's right to travel and use the public streets of the City of Fayette, which do not abut his own property or involve necessary ingress and egress to such property, is a public right, shared by the public generally and derived from and through the city. As stated, the city claims no interest in the real estate and has wholly abandoned any interest, if it did have an interest. Judgment has been entered in favor of plaintiff and against defendant city and no appeal was taken. Appellant has no interest in the described real estate and the judgment should be affirmed. It is so ordered. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.